Carl M. REGAN, # 259613, Petitioner,

v.

Carol HOFFNER, Respondent,

No. CIV.01–CV–72515–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 22, 2002.

Carl Regan, Coldwater, MI, for Plaintiff.

Brenda E. Turner, Michigan Dept. Atty. General Habeas Corpus Div., Lansing, MI, for Respondent.

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

FRIEDMAN, District Judge.

### I. Introduction

Carl M. Regan, ("petitioner"), presently confined at the Lakeland Correctional Facility in Coldwater, Michigan, seeks the issuance of a writ of habeas corpus pursu-

ant to 28 U.S.C. § 2254. In his application, filed *pro se,* petitioner challenges the legality of his conviction after a jury trial in the Wayne County Circuit Court of one count of first degree criminal sexual conduct, M.C.L. § 750.520b, and one count of assault with intent to commit great bodily harm less than murder, M.C.L. § 750.84. Petitioner was sentenced to concurrent terms of imprisonment for fifteen to thirty years for criminal sexual conduct and five to ten years for assault. The Court concludes for the following reasons that the petition must be denied.

### II. Factual Background

"The evidence presented at trial indicated that defendant, a 47–year–old–man, tortured and physically and sexually abused the victim, a 29–year–old mentally disabled woman, over a two month period." *People v. Regan,* Michigan Court of Appeals Docket No. 208807, 2000 WL 33407371 (August 18, 2000)(*per curiam* ).

The victim testified that she was mentally disabled, a legally incapacitated person who had a guardian appointed for her. Petitioner's daughter introduced the victim and petitioner. The victim used crack cocaine for about a year before she met petitioner. She stopped using it after meeting him and going to live at his house. Her desire to stop using crack cocaine was one reason she became involved with petitioner. The victim did not know her way around the neighborhood where petitioner lived on Hubbard Street in Detroit. Petitioner took nude pictures of the victim standing on a bed the first day they met. The complainant agreed to pose for the pictures, but she thought it was unusual for a minister to take such pictures.[1]

The victim testified that her sexual relationship with petitioner was initially volun-

---

1. The complainant testified that petitioner presented himself as a minister. Petitioner testified that he was trying to study to become a minister.

tary. Petitioner performed oral sex on the victim at first. After a few days, petitioner became abusive, yelling at the victim when she did not clean his house to his satisfaction. Petitioner began taking the victim's money from her social security disability checks which her father cashed for her. Later the victim only had sex with petitioner because she was afraid of him. Petitioner forced the victim to perform fellatio on him by threatening to hit her and hitting her on the head if she refused or failed to perform to his satisfaction. When he failed to ejaculate, he would blame the complainant and beat her on the head. Later, he began sticking rubber objects up her rectum and forced her to eat her own feces. Petitioner beat the victim with chains, a whip, and a wooden board. Petitioner hung the victim by chains from pipes in the basement, by handcuffs to a bed, and by handcuffs from pipe attached to the bedroom ceiling. Petitioner struck her in the face with his fists and threw her against concrete walls because she could not read the Bible, since she could only read at about a second grade level. Petitioner would force the victim to perform oral sex on him and rub his ejaculate over her face and chest after beating her. He asked her if she liked it. She would say yes to avoid being beaten, but she actually did not like it. The victim called petitioner "Big Daddy," and "Big Daddy Carl." Transcript Volume I ("Tr. Vol.I") at 60 and Tr. Vol. II at 152.

The victim asked two people who lived upstairs from petitioner to help her, but they refused, saying that petitioner was their friend. Petitioner eventually began beating the victim more severely with a board and burning her with cigarettes and other hot objects. Once, when she had been screaming, the police were called. The victim had a black eye and many cigarette burns on her body, including on her breasts, nipples, legs, and vagina. However, she remained under petitioner's control. The victim was also burned by petitioner's daughter Carla Regan and a woman named Miss Valerie. During the last week she lived in petitioner's house, petitioner burned the victim with coals heated on a stove. Petitioner also burned the victim with hot metal pins which he would stick her with while she was performing oral sex on him. Petitioner beat the victim's feet with a paddle until they were extremely swollen, painful, and bruised. The victim remained under petitioner's control and dominance for almost two months. She remained in his house because she did not know her way around the neighborhood, she was often chained or handcuffed, rarely left alone, and petitioner threatened to kill her father if she ran away. Petitioner also threatened to have her prosecuted and put in prison for allegedly having sexual contact with petitioner's two year old granddaughter, an allegation the victim denied. The victim ran away one day when petitioner left her alone unchained so she could clean the house.

Dr. Leonard Kerr, an emergency room treating physician at Mt. Clemens General Hospital, testified for the prosecution. Dr. Kerr treated the victim in the emergency room. She reported to him that she had been physically and sexually abused for a period of about two months prior to coming to the hospital. The victim reported to Dr. Kerr that:

she was beat about the head and face several times with fists, she was burned with cigarettes, charcoal from a grill. She was scratched several times with the teeth of a brush in the vaginal area. She was also cut with some object in the vaginal area. There was both oral, vaginal, and anal penetration, secondary sex acts. She was tied up in a standing position with her hands tied above her

head to a pole near the bed in the room she was at.

Tr. Vol. I at 90.

Dr. Kerr testified that about twenty (20) per cent of the victim's body was covered with burns, abrasions, and cuts from head to toe. There were cuts, abrasions, and bruising on her head; and abrasions, bruising, and burns on her arms, chest, breasts, and nipples. These burns were about the size of the end of a cigarette. There were severe bruises and many burns on the victim's lower legs and thighs as well. These burns were both cigarette end size and larger. The victim's feet were extremely swollen and bruised. There were superficial bruises and deeply swollen area or hematoma caused by blunt trauma around the vaginal area. *Id.* at 90–98. There was also blood in the vaginal area and a cut and a burn in the vaginal area which was consistent with a cigarette burn. *Id.* at 111–13. There was no evidence of anal trauma or tearing. Dr. Kerr testified that anal penetration may have occurred without trauma or tearing, depending upon the size and nature of the penetrating object, and the force with which it was inserted. A number of photographs of the complainant's injuries were admitted.

Dr. Kerr testified that the victim had a microcephalic or smaller than normal head, consistent with fetal alcohol syndrome and showed behavioral symptoms of suffering from fetal alcohol syndrome as well, including below average intelligence and emotional immaturity. He opined that her intellectual and emotional disability may have caused her to have an unrealistic estimation of the difficulties escaping from petitioner's home presented.

Petitioner testified on his own behalf. Petitioner said he was a former truck driver who lived on social security and SSI because he had kidney problems and a nervous condition. Petitioner said his daughter introduced him to the victim. They had sex for the first time after he had known her five days. Petitioner did not believe the complainant had any problems, apart from her former drug use. Petitioner denied burning the victim with cigarettes, sticking her with pins, burning her with hot coals, or holding her against her will. Petitioner said he never threatened or beat the victim and did not chain her up when he left her alone. Petitioner admitted taking nude photographs of the victim. They were for his personal use only.

Petitioner testified that he was trying to go to ministry school. He took the victim to church several times, including more than once at least one Sunday. He said that he had planned to marry the victim and at one point put a wedding ring in layaway for her, but never gave it to her. He was not certain how the victim had been injured, although it may have happened in a fight with his daughter. Petitioner thought drug dealers had burned the victim's legs. When asked how the victim's feet got so swollen that she could not put shoes on, petitioner replied that he thought she had a hereditary foot disease or condition.

Petitioner's ex-wife, Linda Regan, and his ex-girlfriend, Geraldine Mungion, testified on his behalf. Linda Regan testified that she was married to petitioner for about two and a half to three years and that he had never abused her. They met at church, sang in the choir, fell in love, and married. Petitioner never used profane or abusive language towards her, or abused anyone else, to her knowledge. They were divorced in 1968, almost thirty years before the events at issue in petitioner's trial.

Geraldine Mungion testified that she had known petitioner since 1991. They were boyfriend and girlfriend for a time.

They broke up in February of 1997. Ms. Mungion testified that petitioner never struck her, abused her, stuck her with pins, or paddled her. He did take nude photos of her.

### III. Procedural History

Petitioner was convicted of two counts of first degree criminal sexual conduct and one count of assault with intent to commit great bodily harm less than murder September 19, 1997, after a jury trial before Judge Karen M. Fort Hood. Jury deliberations took a little less than an hour. Petitioner was sentenced on October 10, 1997, to concurrent prison terms of fifteen to thirty years for first degree criminal sexual conduct and five to ten years for assault with intent to do great bodily harm less than murder.

Petitioner appealed his conviction as of right to the Michigan Court of Appeals, which affirmed petitioner's convictions in an unpublished, *per curiam* opinion. *See People v. Regan,* Michigan Court of Appeals Docket No. 208807, 2000 WL 33407371 (August 18, 2000). The Michigan Supreme Court denied petitioner's delayed application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Regan,* Michigan Supreme Court Docket No. 117677, 630 N.W.2d 336 (June 12, 2001).

On or about July 16, 2001, petitioner filed the instant petition for a writ of habeas corpus in this Court, raising the following claims for relief:

I. The trial court violated petitioner's right to a fair trial, his right to confront his accuser, and his right to present a defense by denying any opportunity for an independent medical examination or providing an expert while at the same time allowing the admission of people's exhibit 1, a Macomb County probate file without any testimonial explanation whatsoever concerning its content.

II. Petitioner was denied a fair trial where the prosecution, over objection, and during the defense case, put into evidence a number of X-rated video films seized from the petitioner's apartment, improperly cross-examined defense witnesses, and made prejudicial arguments.

III. Petitioner's right to a fair trial was denied where the prosecutor was permitted to engage in an unnecessary voir dire of the complainant attempting to bolster his theory that she was mentally incapacitated and then was permitted to improperly bolster the complainant's testimony during the defense case by introducing the complainant's previously made statement to the police verbatim in its entirety over defense objection.

IV. The trial court denied petitioner his right to a unanimous verdict by confusing separate prongs of the statute relating to mental state defining one and failing to define the other and then failing to ensure that the jury understood that [its] verdict must be unanimous.

V. The trial court committed reversible error by inappropriately restricting the scope of cross-examination.

Respondent has answered the petition. Respondent asserts that petitioner has failed to exhaust state court remedies as to claims I and III and that the petition therefore should be dismissed without prejudice for failure to exhaust state court remedies as a mixed petition pursuant to 28 U.S.C. § 2254(b)(1) and *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Alternatively, respondent also contends that petitioner's claims lack merit and that the petition, although unexhausted, may be denied on the merits pursuant to 28 U.S.C. § 2254(b)(2).

Petitioner has replied to respondent's answer. Petitioner asserts that he has exhausted state court remedies by pre-

senting his claims to the Michigan courts as federal constitutional claims. Further, petitioner contends that his claims have merit and his petition should not be denied.

### IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998); *Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[2]; *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry

---

**2.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

should ask whether the state court's application of clearly established federal law was objectively unreasonable...

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis in original).

With this standard in mind, the Court proceeds to address the petition for a writ of habeas corpus.

**3.** Respondent asserts that this claim is unexhausted because it was presented as a matter of state law only. This Court disagrees. Review of petitioner's brief in the Michigan Court of Appeals shows that petitioner claimed that this alleged error violated "his right to confront his accuser" in his Statement of Questions Presented. Further, in the body of his brief addressing this claim petitioner stated that "[t]he [Macomb probate] file which consisted mainly of conclusory information concerning an alleged I.Q. test 11 years before the crime and no testimony explaining any of the circumstances clearly implicated Defendant's *right of confrontation.*" Defendant–Appellant's Brief on Appeal at 20–21 (emphasis added). It is undisputed that all of the claims petitioner presented to the Michigan Court of Appeals were also properly presented to the Michigan Supreme Court.

A prisoner filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 must first exhaust all state remedies. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.1994). Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional

## V. *Discussion*

### A. Confrontation Clause Claim

 Petitioner contends that his right of confrontation was violated when the trial judge admitted a Macomb County probate court file over ten years old indicating that the victim had been deemed a mentally incapacitated person and had a guardian appointed for her, while failing to order a contemporaneous independent medical examination or appoint an expert to assist the defense regarding the question of the victim's mental capacity.[3]

Before these records were admitted, defense counsel argued that petitioner's right of confrontation would be violated by admitting the records without being able to cross-examine the doctor and others whose

analysis in similar fact patterns. *Levine v. Torvik,* 986 F.2d 1506, 1516 (6th Cir.1993). State prisoners "must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845; *see also Rust,* 17 F.3d at 160 (exhaustion requirement is satisfied when the state's highest court has been given a full and fair opportunity to rule on the petitioner's claims). A petitioner must present each ground to both appellate courts, even if the state's highest court only provides discretionary appellate review. *O'Sullivan,* 526 U.S. at 845–47. Generally, a federal district court should dismiss a petition for a writ of habeas corpus that contains any unexhausted claims. *Rose v. Lundy,* 455 U.S. at 510, 522; *Rust,* 17 F.3d at 160.

In this case, petitioner explicitly claimed before the Michigan appellate courts that admitting the Macomb probate report while failing to provide an independent medical exam and/or an appropriate expert to assist the defense violated his right of confrontation. This Court concludes that this was sufficient to inform the judges of the Michigan appellate courts that petitioner was asserting a claimed violation of his federal constitutional rights. Therefore, this claim is exhausted. Accordingly, this Court shall address the merits of this claim.

observations were contained in the records. Further, defense counsel argued, in the alternative, that the defense should be allowed to conduct an independent current medical evaluation of the complainant regarding her mental capacity. The prosecution argued that the records were "self-authenticating" and "well within the scope of the Michigan Rules of Evidence." Tr. Vol. I at 5. After argument and from the bench, the trial judge allowed admission of the probate file which she stated, "is just a file dating back to as early as 1986 where a number of people have observed [the victim] and found her to be legally incapacitated and in need of a guardian." Tr. Vol. I at 10.

The Michigan Court of Appeals denied this claim, finding that petitioner failed to meet his burden under Michigan law of showing a compelling reason for an independent medical examination. *People v. Payne*, 90 Mich.App. 713, 723, 282 N.W.2d 456 (1979). There was no compelling reason to order an independent psychiatric examination to determine the complainant's mental capacity, because under Michigan law, "a reasonable person standard is [used] in determining whether the defendant knew or had reason to know the victim was mentally incapable." *People v. Baker*, 157 Mich.App. 613, 614, 403 N.W.2d 479 (1986)(*per curiam*). The jury was able to make this determination on the basis of the complainant's appearance, demeanor, behavior, and testimony at trial.

Regarding the probate report itself, the Confrontation Clause does not require the exclusion of hearsay evidence that has suf-ficient "indicia of reliability." *White v. Illinois*, 502 U.S. 346, n. 8, 112 S.Ct. 736, 742 n. 8, 116 L.Ed.2d 848 (1992); *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–2540, 65 L.Ed.2d 597 (1980); *Reardon v. Manson*, 806 F.2d 39, 43 (2d Cir. 1986). Reliability may be established either by showing that the evidence falls within a "firmly rooted" exception to the hearsay rule, *White v. Illinois*, 502 U.S. at —— 112 S.Ct. at 743; *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, or by showing that the evidence has "particularized guarantees of trustworthiness," *Id.*

■ Whether or not probate legal capacity reports fall within an exception to the hearsay rule that is "firmly rooted," this Court believes the reported observations in such reports bear sufficient indicia of reliability to satisfy the demands of the Confrontation Clause. Such observations have "particularized guarantees of trustworthiness" by virtue of (1) the routine and repetitive circumstances under which such reports are made, (2) the fact that the reports are made contemporaneously with the capacity examination, (3) the existence of statutorily regularized procedures and established standards according to which examinations must be performed and reports prepared, and (4) the fact that capacity examinations are carried out in by trained individuals with specialized qualifications. *See, Manocchio v. Moran*, 919 F.2d 770, 776–80 (1st Cir.1990)(finding that admission of autopsy report for purpose of proving cause of death without personal presence of medical examiner who prepared the report did not violate the Confrontation Clause).[4] Although neither the

---

4. *But see Pickett v. Bowen,* 626 F.Supp. 81, 83–85 (M.D.Ala.1985)(failure of prosecution to either produce physician who examined alleged victim of sexual abuse and made medical report or to demonstrate physician's unavailability violated petitioner's constitutional right to confront his accuser where report was only concrete medical evidence introduced that could be viewed as establishing sexual contact and alleged victim admitted fabricating a similar charge against petitioner's stepson and that she did not want petitioner to marry her mother and whose teachers indicated that they would not believe that alleged victim was actually sexually abused unless there was solid medical evidence supporting her accusation). The present case is distinguishable from *Pickett v. Bowen* in many

prosecutor nor the trial judge cited a particular provision of the Michigan Rules of Evidence, it appears that the Probate Court file could be admitted under the hearsay exception MRE 803(6), Records of Regularly Conducted Activity, or MRE 803(8), Public Records and Reports. Evidence admissible under both of these exceptions may be admitted regardless of the availability of the declarant.

Therefore, this Court concludes that the admission of the Macomb probate court file report did not violate the Confrontation Clause.

■ Alternatively, even were this Court to assume *arguendo* that the state trial court had violated petitioner's rights under the Confrontation Clause by admitting the probate report without providing an independent medical examination of the complainant, or appointing an expert for the defense, this Court would nevertheless conclude that such error was harmless. The violation of a defendant's right of confrontation is subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In a habeas corpus case, where a petitioner challenges his conviction collaterally, an error is harmless unless it "had a substantial and injurious effect on the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Thus, when a court considers a Confrontation Clause

violation in a habeas corpus proceeding, the relevant harmless-error inquiry is the alleged error "had a substantial and injurious effect on the jury's verdict," *Brecht*, 507 U.S. at 638, 113 S.Ct. 1710, 123 L.Ed.2d 353.[5] *See also O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict).

■ Under the *Brecht* standard, even if this Court assumes for the sake of argument that the Confrontation Clause error alleged by petitioner occurred, this Court holds that such error did not have a "harmful or injurious effect" on the fundamental fairness of the trial.

Petitioner was charged with two counts of first degree criminal sexual conduct. One count was based on allegations of penile-oral sex, the other count on penile-vaginal sex. Petitioner did not challenge the element of sexual penetration; his defense was consent.

Petitioner was charged under two theories of first degree criminal sexual conduct. Under one theory, set forth in M.C.L. § 750.520b(1)(f), a person is criminally liable if he engages in non-consensual sexual penetration with another person, causes personal injury to the victim, and force or coercion is used to achieve the

---

respects, including 1) other evidence of the complainant's mental status (the subject of the probate report) was available, including her own in-court testimony, demeanor, and behavior; 2) there was no evidence that the complainant had ever fabricated a similar charge or accusation; and 3) the evidence of the victim's mental status was not an essential element of the crime of first degree criminal sexual conduct under M.C.R. § 750.b(1)(f), which bases liability on non-consensual sexual penetration through force or coercion, where the perpetrator causes personal injury to the victim.

**5.** The Sixth Circuit has recently applied *Brecht* harmless error analysis to a Confrontation Clause challenge despite the fact that it does not appear that the state court engaged in harmless error analysis. *See Norris v. Schotten*, 146 F.3d 314, 330 (6th Cir.1998). The Sixth Circuit has more recently held that the harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error. *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999).

sexual penetration. Under the second theory, set forth in M.C.L. § 750.520b(1)(h)(ii), a person is criminally liable if he engages in sexual penetration with another person and that other person is mentally incapable, or mentally disabled, or mentally incapacitated, and the defendant is in a position of authority over the victim and used this authority to coerce the victim to submit. Under this theory, the victim is deemed to be unable to give meaningful, legally recognized consent.

The jury announced its general verdict of guilty on both counts of first degree criminal sexual conduct and guilty of assault with intent to commit great bodily harm less than murder after deliberating less than an hour. The jury did not specify the theory or theories under which it convicted petitioner of first degree criminal sexual conduct.[6]

Extremely compelling testimonial and physical evidence was presented that petitioner threatened to and actually used physical force and violence to coerce the victim to have oral and vaginal sexual relations with him for nearly two months and that he caused personal injury to her while so doing. Petitioner raised the defense of consent, but the jury found him guilty after deliberating less than an hour. Further, the jury found petitioner guilty *both* of first degree criminal sexual conduct *and* assault with intent to do great bodily harm. Therefore, the jury clearly found that petitioner caused personal injury to the victim.

Thus, there is overwhelming evidence that the jury found petitioner guilty of first degree criminal sexual conduct under the theory set forth in M.C.L. § 750.520b(1)(f)—that he caused personal injury to the victim and used force or coercion to achieve sexual penetration. Consequently, this Court is not persuaded that any Confrontation Clause error which may have occurred concerning the mental capacity of the victim had a "substantial and injurious effect on the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. at 638. This Court has no "grave doubt" in this regard. *O'Neal v. McAninch,* 513 U.S. at 445. For Confrontation Clause error regarding admission of the probate report to have substantially and adversely affected petitioner's case, the jury would have had to have 1) not found beyond a reasonable doubt that petitioner caused personal injury to the victim and used force or coercion to achieve sexual penetration and 2) relied upon the information contained in the 1986 probate report to find that the complainant was a mentally disabled person. Based on the evidence summarized in section II of this opinion, showing as the Michigan Court of Appeals stated, that petitioner tortured and physically and sexually abused the victim for about two months, and the fact that the jury convicted petitioner of assault with intent to do great bodily harm as well as first degree criminal sexual conduct, this Court is not persuaded that there is any reasonable probability the jury found petitioner guilty of first degree criminal sexual conduct by relying on the evidence of mental disability found in the probate report. Accordingly, petitioner's Confrontation Clause claim is denied.

**6.** The trial judge's jury instructions indicate that petitioner was charged under M.C.L. § 750.520b(1)(f) and M.C.L. § 750.520b(1)(h)(ii). Under M.C.L. § 750.520b(1)(g), a person is criminally liable if he has sexual penetration with another person without that person's consent, causes personal injury to that person, and knows or has reason to know that the victim is mentally incapable, or mentally disabled, or mentally incapacitated. However, the jury was not instructed on the elements of M.C.L. § 750.520b(1)(g).

## B. Evidentiary Claims

Petitioner alleges that he was denied a fair trial when, over defense objections, the trial judge allowed admission of various X-rated videotapes seized in a search of petitioner's home and allowed the prosecution to question Linda Regan and Geraldine Mungion about whether they ever watched X-rated videos with petitioner. Ms. Mungion testified that she had watched such videos with petitioner. Ms. Regan testified that she had not. Petitioner contends that this subject matter is so inflammatory that it prejudiced the jury against him, particularly as he was charged with criminal sexual conduct and there was testimony that he had taken nude pictures of the victim.

Petitioner's claims regarding admission of the X-rated videos and cross-examination of defense witnesses about them are matters of alleged state law errors. Claims concerning errors of state law alone are not cognizable in habeas corpus. A federal writ of habeas corpus reaches only convictions and sentences obtained in violation of some provision of the United States Constitution. *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). " '[F]ederal habeas corpus relief does not lie for errors of state law.' " *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)(quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). *See also, Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) and *Floyd v. Alexander,* 148 F.3d 615, 619 (6th Cir.)(concluding that violation of state law is not cognizable in federal habeas corpus proceedings), *cert. denied,* 525 U.S. 1025, 119 S.Ct. 557, 142 L.Ed.2d 464 (1998).

■ Violations of state evidentiary laws generally do not form the basis upon which federal habeas corpus relief can be granted. A habeas proceeding concerns only whether federal constitutional rights were infringed. *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *United States ex rel. DiGiacomo v. Franzen,* 680 F.2d 515, 517 (7th Cir.1982) (*per curiam* ). Violations of state evidentiary rules, therefore, "may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Brinlee v. Crisp,* 608 F.2d 839, 850 (10th Cir.1979), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980). Errors in rulings regarding the admission or exclusion of evidence, are usually not grounds for federal habeas relief. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). Violations of state law and procedure which do not infringe specific federal constitutional rights are generally not cognizable in habeas corpus. "An evidentiary ruling is a cognizable ground for federal habeas corpus relief if it deprived the state court defendant of fundamental fairness." *Bundy v. Dugger* 850 F.2d 1402, 1422 (11th Cir.1988). However, the reviewing court will only grant federal habeas corpus relief where a violation of a state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Id.* As the Eleventh Circuit stated, the standard in determining whether an erroneous evidentiary ruling "constitutes a denial of fundamental fairness is whether the evidence is material in the sense of a crucial, critical, highly significant factor." *Leverett v. Spears,* 877 F.2d 921, 925 (11th Cir.1989)(internal citations omitted).

The Michigan Court of Appeals rejected petitioner's claims regarding the X-rated videos as follows:

> Any error relating to the admission of this evidence was harmless in light of (1) the compelling testimony given by the victim, which was supported by the emergency room physician who treated her, (2) defendant's admission at trial

that he owned pornographic videotapes, and (3) the testimony of petitioner's ex-girlfriend, who testified that she had watched pornographic videotapes with defendant. Defendant has not established that it is more probable than not that a different outcome would have occurred but for the alleged error.

*People v. Regan*, Michigan Court of Appeals Docket No. 208807 at 2, 2000 WL 33407371.

■ This Court agrees. Petitioner has not shown that, in light of the compelling evidence that he tortured, and physically, psychologically, and sexually assaulted the victim for almost two months, the admission of the evidence regarding his possession and viewing of X-rated movies, even if error, deprived him of a fundamentally fair trial or due process of law. The movie evidence was not material in the sense of being about a crucial, critical, highly significant factor. On the contrary, next to the exceedingly graphic and detailed testimony and medical evidence of the horrific treatment the victim sustained at petitioner's hands, it is doubtful that the evidence that petitioner sometimes watched X-rated movies with members of the opposite sex had any impact whatsoever on the jury's verdict. Habeas corpus relief may not be granted on a claim of trial error unless the petitioner shows that constitutional trial

error had a "substantial and injurious effect on the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 638. Petitioner has not approached, much less met, this standard regarding this claim. Therefore, even if, for the sake of argument it is assumed without deciding that petitioner's movie evidence claim sets forth a cognizable claim of alleged federal constitutional error, any error in the admission of the evidence concerning the X-rated movies was harmless. Consequently, the Michigan Court of Appeals denial of this claim was reasonable and it does not entitle petitioner to habeas corpus relief.

### C. Unnecessary *Voir Dire* and Admission of Prior Statement Claims

■ Petitioner contends that he was denied a fair trial by the trial court's allowing the prosecutor to *voir dire* the complainant about her competency to testify and allowing admission of a prior consistent statement the complainant made to the police. As with petitioner's X-rated movie claims, these are alleged errors of state evidentiary law which are generally not cognizable in federal habeas corpus. *See e.g., Pulley v. Harris*, 465 U.S. at 41.[7]

Further, it is doubtful that admission of this evidence was state law error. As found by the Michigan Court of Appeals,

---

7. A habeas petitioner may not present a "mixed" petition containing both exhausted and unexhausted claims to a federal court. *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir.2000). However, a habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). An unexhausted claim may be addressed if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. 28 U.S.C. § 2254(b)(2); *Matthews v. Abramajtys*, 92

F.Supp.2d 615, 628 (E.D.Mich.2000)(Tarnow, J.)(internal citations omitted). In these circumstances, a federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir.1991). Because petitioner's *voir dire* and admission of prior consistent statement claims are non-federal claims and lack merit, in the interests of efficiency and justice, the Court will address these claims, rather than dismiss the petition on exhaustion grounds. *Welch v. Burke*, 49 F.Supp.2d 992, 998 (E.D.Mich.1999)(Cleland, J.).

the prosecutor was allowed to qualify the complainant as a witness and show that she was competent to testify. *People v. Burch*, 170 Mich.App. 772, 774, 428 N.W.2d 772 (1988). The victim's statement to the police was admitted to rebut an implied charge of fabrication and was consistent with her trial testimony. The victim was subject to cross-examination at trial, so admission of the statement presented no Confrontation Clause problems. Consequently, admitting this evidence was not state law error. *People v. Starr*, 457 Mich. 490, 577 N.W.2d 673 (1998); M.R.E. 801(d)(1)(B). *See also, Zuern v. Tate*, 101 F.Supp.2d 948, 968–69 (S.D.Ohio 2000).

Moreover, admission of this evidence did not deprive petitioner of a fundamentally fair trial. Petitioner was not deprived of a defense, deprived of his right of confrontation, or subjected to unfair surprise by admission of this evidence. On the contrary, petitioner was able through cross-examination and argument to challenge the victim's mental capacity and her version of the nature of the sexual relationship between petitioner and herself. Further, in light of the totality of the evidence offered at trial, the complained of *voir dire* and prior consistent statement were insignificant. Again, petitioner fails to show that, even if assumed to be improper and constitutional error, admission of this evidence had "substantial and injurious effect on the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 638. Therefore, petitioner's claims regarding the competency *voir dire* and admission of the complainant's prior consistent statement are denied.

### D. Jury Instruction Claims

Petitioner claims that he was denied a fair trial by improper jury instructions. Petitioner contends that the trial judge gave confusing instructions regarding the complainant's mental state which had to be found to convict him under the theory that petitioner used a position of authority to coerce a mentally disabled person to have sex with him. Petitioner contends that this allegedly confusing instruction deprived him of his right to a unanimous jury verdict, because some jurors may have voted to convict because they believed that the complainant was too mentally retarded to consent to have sex, while some others may have voted to consent because they believed that the complainant was too mentally incapacitated to consent.

The Michigan Court of Appeals denied this claim as follows:

> [W]e reject defendant's claims that the trial court's instructions regarding mental disability were confusing because the trial court referred to both "mental disability" and "mental incapacitation" when instructing the jury. The instructions given, although somewhat imperfect, fairly presented the element of mental disability to the jury and protected defendant's rights. The instructions included all of the elements of the crime charged and did not exclude any material issues or defenses. Although the trial court erroneously referred to a "mental incapacity" instead of a "mental disability" when instructing the jury on the requirement that the defendant either knew or should have known of the victim's mental condition, that one mistaken reference did not prejudice defendant.

*People v. Regan*, Michigan Court of Appeals Docket No. 208807 at 3, 2000 WL 33407371 (internal citations omitted).

 The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected

the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned." *Henderson v. Kibbe,* 431 U.S. 145, 154–155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell,* 209 F.3d 854, 882 (6th Cir.2000); cert. den. 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000). Allegations of trial error raised in challenges to jury instructions are reviewed for harmless error by determining whether they had a substantial and injurious effect or influence on the verdict. *Id.* Furthermore, In conducting habeas review, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire,* 502 U.S. at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Further, review of an ambiguous, potentially erroneous instruction must determine whether there is a reasonable likelihood that the jury applied the instruction in a way that violates the Constitution. *See Estelle,* 502 U.S. at 72 (citing *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

■ This Court agrees with the Michigan Court of Appeals. The trial judge's instructions, taken as a whole, adequately instructed the jury about the elements it was required to find petitioner guilty under the theory that he engaged in sexual penetration with a mentally disabled person and used a position of authority over the victim to coerce the victim to submit. Further, the trial judge explicitly instructed the jury that its verdict must be unanimous. Tr. Vol. III at 396–97. The alleged error in jury instructions was at most an ambiguous, potentially erroneous instruction concerning the victim's mental condi-

tion. There is no reasonable probability that the jury applied the instruction in an unconstitutional fashion for two reasons. First, because as the Michigan Court of Appeals noted, the jury was fairly instructed on the element of mental disability necessary to be found to convict on this theory. Second, as previously noted, given the detailed, graphic, and compelling testimonial and physical evidence that petitioner tortured and physically and sexually abused the victim for about two months, and the fact that the jury convicted petitioner of assault with intent to do great bodily harm as well as first degree criminal sexual conduct, there is no reasonable probability the jury found petitioner guilty of first degree criminal sexual conduct by applying an erroneous jury instruction regarding the theory that he was guilty by virtue of violating M.C.L. 750.520b(h)(ii), that is, by knowingly or negligently engaging in sexual penetration with a mentally disabled person by using a position of authority to coerce the victim to submit. Petitioner has not shown that there is a reasonable probability that an erroneous jury instruction had a substantial and injurious impact on the jury's verdict. Therefore, his jury instructions claims are denied.

**E. Cross-examination claim**

Petitioner contends that he was denied a fair trial through improper restriction of the scope of cross-examination. Petitioner asserts that the trial court improperly restricted his cross-examination of the complainant concerning the cause of her injuries to her legs.

The Michigan Court of Appeals denied this claim on the following basis:

[D]efendant claims that the trial court should have permitted him to ask the victim whether the injuries to her legs were caused by drug dealers. However,

defendant never attempted to elicit this information from the victim and made no offer of proof to this effect. See M.R.E. 103(a)(2). Additionally, we note that evidence was eventually introduced through defendant's testimony to the effect that the victim allegedly told him that drug dealers caused the injury to her legs. Therefore, the jury was provided with this evidence, albeit through the testimony of defendant.

*People v. Regan,* Michigan Court of Appeals Docket No. 208807 at 2, 2000 WL 33407371.

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. This fundamental right of confrontation is secured for those defendants tried in state as well as federal criminal proceedings. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The United States Supreme Court has held that "a primary interest secured by (the confrontation clause) is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Indeed, the right of crossexamination is part and parcel of confrontation, and the latter is meaningless without the former.

In *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Court reiterated much of the above and stated:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has tra-

ditionally been allowed to impeach, i.e., discredit, the witness.

The courts have distinguished between general and particular attacks on a witness's credibility. One way to attack a witness's credibility is to introduce evidence of prior convictions. The proponent of such evidence seeks to provide the jury a basis for inferring that the witness is less credible than the average citizen, or a witness who has no prior criminal record. "The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis,* 415 U.S. at 316.

The Supreme Court has emphasized that "'the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross examination.'" *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (quoting *Davis,* 415 U.S. at 316–17). It then elaborated that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall,* 475 U.S. at 680.

Following *Davis,* the Sixth Circuit has held that "a limitation on crossexamination which prevents a person charged with a crime from placing before the jury facts from which bias, prejudice or lack of credibility of a prosecution witness might be inferred constitutes denial of the right of confrontation guaranteed by the Sixth Amendment." *United States v. Garrett,* 542 F.2d 23, 25 (6th Cir.1976). As the

Sixth Circuit has recently stated, the Sixth Amendment "compels cross-examination if that examination aims to reveal the motive, bias, or prejudice of a witness/accuser." *Boggs v. Collins*, 226 F.3d 728, 740 (6th Cir.2000).

 Petitioner's cross-examination claim lacks merit for several reasons. First, as noted by the Michigan Court of Appeals and respondent, defense counsel did not attempt to cross-examine the complainant about the injuries to her legs, or make an offer of proof in this regard which the trial court foreclosed. Thus, as a factual matter, there is no support for petitioner's claim that the trial court improperly restricted cross-examination in this regard. Second, this claim does not allege restriction of cross-examination regarding a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. at 680. Rather, it concerns only some of the many injuries sustained by the victim and documented by expert medical testimony and photographs. This claim does not allege that the petitioner was prevented from inquiring into an area which would have fundamentally challenged the overall credibility of the complainant. Finally, the complainant's testimony and the medical evidence showed that she suffered burns, cuts, abrasions, bruises, and at least one very large hematoma on her face, head, arms, feet, breasts, nipples, and vaginal area, literally from head to toe. The victim testified convincingly that petitioner caused these injuries. Petitioner did not deny that the victim was living with him during the period when she sustained most of these injuries. Consequently, any improper restriction on the defense's ability to cross-examine the victim as to the source of the injuries *to her legs alone* could only have been harmless error. For the above-stated reasons, petitioner has failed to show that any restriction of his ability to cross-examine the complainant about the source of the inju-

ries to her legs had a substantial and injurious impact on the jury's verdict. Consequently, this claim is denied.

### IV. *Order*

In summary, federal habeas corpus relief is not warranted under any theory advanced by petitioner. Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED WITH PREJUDICE.**